UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
XIAO WANG LIN, AN INFANT, BY             :    Docket No. 06 CV 5705
HIS NATURAL PARENTS KAM                  :              (ILG)(CLP)
FUNG LAM AND XIAO LIN DING,              :
                                         :    First Amended Complaint
                 Plaintiffs,             :
                                         :    Jury Trial Demanded
       -against-                         :
                                         :
THE CITY OF NEW YORK NEW YORK            :
CITY POLICE OFFICER DANIELLE             :
SHEEHAN, SHIELD NO. 02399, NEW           :
YORK CITY POLICE OFFICER MARK            :
KOSAREK, SHIELD NO. 26958, NEW           :
YORK CITY POLICE OFFICER MARIO           :
RECINOS, SHIELD NO. 28655, NEW           :
YORK CITY POLICE OFFICER JAMES           :
HOGAN, SHIELD No. 25561, NEW YORK        :
CITY POLICE OFFICER CHRISTOPHER          :
WARD, SHIELD NO. 23376, NEW YORK         :
CITY POLICE OFFICER CHARLES              :
McDONALD, SHIELD NO. 10025, NEW          :
YORK CITY POLICE OFFICER JAVIER          :
MUNOZ, SHIELD NO. 10519, NEW YORK        :
CITY POLICE DETECTIVE MICHAEL A.         :
OBRIEN,                                  :
                                         :
                                         :
                 Defendants.             :
-----------------------------------------------------------------X

   Plaintiffs Xiao Wang Lin, an infant, by his natural parents, Kam Fung Lam and Xiao Lin Ding, by their attorneys Jonathan Marks, P.C., hereby complain of defendants The City of New York New York City Police Officer Danielle Sheehan, Shield No. 02399, New York City Police Officer Mark Kosarek, Shield No. 26958, Police Officer Mario Recinos, Shield No. 28655, New York City Police Officer James Hogan, Shield No. 25561, New York City Police Officer Christopher Ward, Shield No. 23376, New York City Police Officer Charles McDonald, Shield No. 10025, New York

Ctity Police Officer Javier Munoz, Shield No. 10519 and New York City Police Detective Michael O'Brien as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, containing supplemental state law counts. The complaint alleges that New York City Police Officers brutally attacked a fourteen (14) year old boy, infant plaintiff Xiao Wang Lin, without justification, while responding to a call for assistance at the Chinese Restaurant owned by his parents.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. This Court has jurisdiction over plaintiffs' New York State Law Claims pursuant to its supplemental jurisdiction, 28 U.S.C. § 1367, as these claims are so related to plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Prior to the commencement of suit, plaintiffs timely complied with the requirements imposed by New York's General Municipal Law with respect to their state law claims, by timely filing a notice of claim and timely submitting to a "50-h" hearing.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the events and omissions giving rise to the claim arose within the Eastern District of New York.

## PARTIES

6. At all times set forth herein, infant-plaintiff Xiao Wang Lin ("Lin" or the "infant-plaintiff") (d.o.b. April 8, 1991), was and is an individual residing within the Eastern District of New York at 365 New Jersey Avenue, 2nd Floor, Brooklyn, NY 11207. He is the natural son of Kam Fung Lam and Xiao Lin Ding.

7. At all times set forth herein, plaintiff Kam Fung Lam ("Lam"), was and is an individual residing within the Eastern District of New York at 365 New Jersey Avenue, 2nd Floor, Brooklyn, NY 11207. Lam is the natural father of infant-plaintiff Lin and the husband of plaintiff Xiao Lin Ding. He sues in his representative capacity only as the infant-plaintiff's father.

8. At all times set forth herein, plaintiff Xiao Lin Ding ("Ding"), was and is an individual residing within the Eastern District of New York at 365 New Jersey Avenue, 2nd Floor, Brooklyn, NY 11207. Ding is the natural mother of infant-plaintiff Lin and the wife of plaintiff Kam Fung Lam. She sues both individually and in her representative capacity only as the natural mother of the infant-plaintiff.

9. Upon information and belief, the City of New York is a municipal corporation organized under The Constitution and Laws of the State of New York, The New York City Charter and The New York City Municipal Code, and is comprised of various departments, divisions, branches and agencies, including The New York City Police Department.

10. Upon information and belief, at all times set forth herein, defendant New York City Police Officer Danielle Sheehan, Shield No. 02399 ("Sheehan") was and is employed by the City of New York as a police officer stationed at

the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, Sheehan is alleged to have been acting within the scope of her employment as a New York City Police Officer, and under color of state law.

11. Upon information and belief, at all times set forth herein, defendant New York City Police Officer Mark Kosarek, Shield No. 26958 ("Kosarek") was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, Kosarek is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

Upon information and belief, at all times set forth herein, defendant New York City Police Officer Mario Recinos, Shield No. 28655 ("Recinos") was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, Recinos is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

12. Upon information and belief, at all times set forth herein, defendant New York City Police Officer James Hogan, Shield No. 25561 ("Hogan") was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, Hogan is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

13. Upon information and belief, at all times set forth herein, defendant New York City Police Officer Christopher Ward, Shield No. 23376 ("Ward")

was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, Ward is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

14. Upon information and belief, at all times set forth herein, defendant New York City Police Officer Charles McDonald, Shield No. 10025 ("McDonald") was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, McDonald is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

15. Upon information and belief, at all times set forth herein, defendant New York City Police Officer Javier Munoz, Shield No. 10519 ("Munoz") was and is employed by the City of New York as a police officer stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, McDonald is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

16. Upon information and belief, at all times set forth herein, defendant New York City Police Detective Michael O'Brien ("O'Brien") was and is employed by the City of New York as a police detective stationed at the 75 Police Precinct located at 1000 Sutter Avenue, Brooklyn, NY 11207. At all times set forth herein, O'Brien is alleged to have been acting within the scope of his employment as a New York City Police Officer, and under color of state law.

## STATEMENT OF FACTS

18. At all times set forth herein, plaintiffs Lam and Ding were and are the proprietors of the "Wok" takeout restaurant located at 627 Sutter Avenue, Brooklyn, NY 11207 (the "Takeout Restaurant").

19. On November 20, 2005, at approximately 3:30 p.m., a youth attending a neighborhood church attempted to throw garbage in and around an outside trash receptacle designated for the Takeout Restaurant.

20. Plaintiff Lam went outside the Takeout Restaurant and admonished the youth not to toss his garbage in the Restaurant's receptacle. At this time, Lam grabbed the youth's shoulder.

21. A short while later, the youth's father appeared at the restaurant and accused Lam of hitting his son and stated to Lam that he wanted to fight him.

22. Lam called the police for assistance. The police did not come right away. In all Lam called the police approximately six (6) times for assistance. Between thirty (30) to sixty (60) minutes after Lam's initial call, the police arrived.

23. Upon information and belief, based upon documents provided by the City of New York, including a letter provided by the Office of the Corporation Counsel dated December 28, 2007 pursuant to an order of this court, the officers arriving on the scene were individually-named defendants Sheehan, Kosarek, Recinos, Hogan, Ward, McDonald, Munoz and O'Brien.

24. In the interim period between the time Lam called the police and the time the police finally arrived, a crowd from the church had amassed outside the Takeout Restaurant in protest of Lam's alleged "hitting" of the youth.

25. When the police arrived, the infant-plaintiff translated what plaintiff Lam said had happened to the police. He then went inside the kitchen area of the Takeout Restaurant to do his homework.

26. However, shortly thereafter, one of a number of the church congregants, including the father of the youth, struck plaintiffs' car window.

27. Plaintiff Ding smashed a Snapple bottle to the ground in anger over the vandalizing of the family car, in the presence of the police.

28. Plaintiff Ding then went inside the Takeout Restaurant.

29. Thereafter, the individually-named defendant police officers entered the Takeout Restaurant.

30. Lin unlocked the door to the kitchen area and the police entered. One "short cop," one of the individually-named defendants herein grabbed Lin in a headlock, while other individually-named officers grabbed him by the arms and legs and dragged him from the kitchen area to the dining area, while the remaining individually-named police officer defendants failed to intercede to assist Lin.

31. Thereafter, individually-named police officers proceeded to kick and punch the infant-plaintiff in his stomach and punched him in his face, including his right eye and left side of his face, causing him to bleed, while others failed to intercede to prevent the attack and the continuation of the attack, although they had an opportunity to do so.

32. At no time did the infant-plaintiff resist, or give the police officers legal cause to use physical force upon him.

33. The subject police officers refused the infant-plaintiff's request for a napkin to stop the bleeding.

34. Both the infant-plaintiff and plaintiff Ding were arrested and transported to the 75th Police Precinct.

35. The infant-plaintiff was released from police custody between 10:30 and 11:30 p.m. on November 20, 2005.

36. The infant-plaintiff was charged with Obstructing Governmental Administration and Resisting Arrest. Charges were dismissed in the Family Court on or about December 12, 2005.

## PLAINTIFFS' FIRST COUNT
{Based Upon Excessive Force In Violation Of The 4th And 14th Amendments}

37. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

38. The unprovoked and brutal attack upon the then-14 year old infant plaintiff by police officers constituted an application of excessive force in violation of the 4th Amendment to the United States Constitution, as made applicable to the States through the 14th Amendment.

39. Moreover, this attack violated the 14th Amendment's substantive due process component.

40. The unlawful acts complained of were carried out by defendants Sheehan, Kosarek, Recinos, Hogan, Ward, McDonald, Munoz and O'Brien, acting in

8

concert, who either carried out the attack or failed to intercede to prevent and stop the attack although able to do so.

41. All police officers complained of herein are alleged to have been acting under color of state law and at all times were acting intentionally and/or willfully.

42. The unlawful acts and omissions complained of herein were proximately caused by the City's deliberate indifference towards protecting members of the public from acts of excessive force by police officers, as evidenced, inclusively, by its inadequate hiring, training and supervising of police officer, as well as an inadequate policy concerning the disciplining of police officers who have been shown to have violated the constitution and laws of the United States.

43. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

44. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought against The City.

### PLAINTIFFS' SECOND COUNT
{A State Law Claim Based Upon
Assault And Battery}

45. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

46. Individually named police officer defendants Sheehan, Kosarek, Recinos, Hogan, Ward, McDonald, Munoz and O'Brien, acting in concert, made excessive, unlawful and unprivileged bodily contact with the infant-plaintiff, as set forth above, or failed to intercede to prevent or halt the attack.

47. The subject police officers were acting intentionally and/or recklessly, and within the scope of the duties as New York City Police Officers.

48. Such unlawful physical contact constitutes a battery under New York Law.

49. Moreover, the infant-plaintiff was placed in apprehension of the unlawful attacks immediately before each kick or blow.

50. The foregoing unlawful police conduct therefore also constitutes the tort of assault.

51. The City is liable for the unlawful acts and omissions complained of in this Count under the doctrine of *respondeat superior*.

52. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

53. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought against The City.

## PLAINTIFFS' THIRD COUNT
{Based Upon False Arrest and Imprisonment In Violation
Of The 4th And 14th Amendments}

54. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

55. Defendant Police Officers Sheehan, Kosarek, Recinos, Hogan, Ward, McDonald, Munoz and O'Brien lacked probable cause to arrest the infant-plaintiff. Those officers not participating directly in the arrest failed to intercede to prevent or interfere with the continuation of the arrest although they were able to do so.

56. All defendant police officers are alleged to have been acting under color of state law and intentionally and/or recklessly.

57. At all times set forth herein, the infant-plaintiff was aware of his involuntary confinement by police officers.

58. The foregoing constitutes a false arrest of the infant-plaintiff, in violation of his rights protected under the 4th Amendment to the United States Constitution as made applicable to the States through the 14th Amendment.

59. The unlawful acts and omissions complained of herein were proximately caused by the City's deliberate indifference towards protecting members of the public from false arrests by police officers, as evidenced, inclusively, by its inadequate hiring, training and supervising of police officer, as well as an inadequate policy concerning the disciplining of police officers who have been shown to have violated the Constitution and Laws of the United States.

60. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents

have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

61. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought as against The City.

### PLAINTIFFS' FOURTH COUNT
{A State Law Claim Based Upon
False Arrest and Imprisonment}

62. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

63. The acts and omissions complained of in the Third Count also constitute false arrest and imprisonment under New York State Law.

64. The City is liable for the unlawful acts and omissions complained of in this Count under the doctrine of *respondeat superior*.

65. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

66. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought as against The City.

## PLAINTIFFS' FIFTH COUNT
{Based Upon Malicious Prosecution
In Violation Of The 4th And 14th Amendments}

67. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

68. Defendant Police Officers Sheehan, Kosarek, Recinos, Hogan, Ward, McDonald, Munoz and O'Brien commenced and continued a Family Court Juvenile Proceeding against the infant-plaintiff for resisting arrest and obstructing governmental administration, or otherwise failed to intercede to prevent the commencement or continuation of this frivolous proceeding.

69. The defendant police officers lacked probable cause to commence and continue the foregoing prosecution.

70. The defendant police officers commenced and continued the foregoing prosecution with malice.

71. The infant-plaintiff received a favorable termination to the charges when they were dismissed on or about December 13, 2005.

72. The infant-plaintiff's freedom of movement was impinged in that he was required to appear in Court defend against the charges.

73. The foregoing constitutes a malicious prosecution of the infant-plaintiff in violation of his rights protected under the 4th Amendment as made applicable to the States through the 14th Amendment, as well as a violation of the procedural due process component of the 14th Amendment.

74. The unlawful acts and omissions complained of herein were proximately caused by the City's deliberate indifference towards protecting members of

the public from false arrests by police officers, as evidenced, inclusively, by its inadequate hiring, training and supervising of police officer, as well as an inadequate policy concerning the disciplining of police officers who have been shown to have violated the Constitution and Laws of the United States.

75. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

76. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought as against The City.

### PLAINTIFFS' SIXTH COUNT
{A State Law Claim Based Upon
Malicious Prosecution}

77. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

78. The acts and omissions complained of in the Fifth Count also constitute false arrest and imprisonment under New York State Law.

79. The City is liable for the unlawful acts and omissions complained of in this Count under the doctrine of *respondeat superior*.

80. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents

14

have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

81. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought as against The City.

PLAINTIFFS' SEVENTH COUNT
{A State Law Claim Based Upon
Intentional Infliction Of Emotional Distress}

82. Plaintiffs repeat each of the previous allegations, incorporating them in this Count by reference.

83. The foregoing conduct by police officers, which included, but was not limited to a sadistic physical attack, arrest and prosecution, is shocking to the conscious, so as to constitute the tort of the intentional infliction of emotional distress by the defendant police office who perpetrated the tortious, or, alternatively, failed to intercede to prevent them.

84. The City is liable for the unlawful acts and omissions complained of in this Count under the doctrine of *respondeat superior*.

85. As a result of the allegations set forth in this Count, the infant-plaintiff has experienced great physical and emotional pain and suffering, and his parents have incurred special damages, all in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

86. Plaintiffs also seeks punitive damages based upon the outrageous conduct of the individual defendant police officers, in an amount to be determined at trial,

but not less than Five Hundred Thousand Dollars ($500,000). Punitive damages are not sought against The City.

WHEREFORE, plaintiffs demand judgment, as follows:

1.     On the First Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

2.     On the Second Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

3.     On the Third Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

4.     On the Fourth Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

5.     On the Fifth Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

6. On the Sixth Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

7. On the Seventh Count, compensatory damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000) together with punitive damages in an amount to be determined at trial, but not less than Five Hundred Thousand Dollars ($500,000);

8. The taxation of counsel fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable authority;

9. Interest;

10. Together with whatever further relief is deemed just and appropriate by this Court.

Dated: New York, New York
January 7, 2008

                    Jonathan Marks, P.C.
                    Attorneys for Plaintiffs
                    220 Fifth Avenue, 3rd Floor
                    New York, New York 10001
                    (212) 545-8008

By: *[signature]*
      Nelson M. Farber (NMF-2154)
      Of Counsel